**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH DAKOTA**
**CENTRAL DIVISION**

| | |
|---|---|
| LOWER BRULE SIOUX TRIBE; and individual members Neil Pierre Russell, Stephanie Bolman, and Ben Janis, | |
| *Plaintiffs*, | Case No. 3:22-cv-3008 |
| v. | **COMPLAINT** |
| LYMAN COUNTY; LYMAN COUNTY BOARD OF COMMISSIONERS; BRIAN KRAUS, in his official capacity as Lyman County Commissioner; LESLIE REUER, in her official capacity as Lyman County Commissioner; ZANE REIS, in his official capacity as Lyman County Commissioner; RYAN HUFFMAN, in his official capacity as Lyman County Commissioner; JARED SCHELSKE, in his official capacity as Lyman County Commissioner; and DEB HALVERSON, in her official capacity as Lyman County Auditor, | |
| *Defendants*. | |

**INTRODUCTION**

1.      The Lower Brule Sioux Tribe ("Lower Brule") and members of Lower Brule

("Plaintiffs") who are registered to vote in Lyman County ("County") bring this action

to challenge the County's decision to delay the implementation of its new redistricting

plan for electing its Board of Commissioners. Because of that decision, Native American

1

voters in Lyman County will not have a full and equal opportunity to elect candidates of their choice to the Lyman County Board of Commissioners until 2026. The assault on Plaintiffs' voting rights has the purpose and effect of artificially suppressing the ability of Native Americans to participate equally in the electoral process in Lyman County in a stark and measurable way: but for the illegal actions of the County, there would be at least two Native preferred County seats in the upcoming 2022 election.

2.      Lyman County and Plaintiffs *agree* that the County must establish two commissioner positions chosen by majority Native American electorates. However, the Lyman County Commissioners have adopted a redistricting plan that will not allow Native American voters to elect the first of the two commissioners to which they are entitled until 2024 and will not provide the opportunity to elect the second until 2026. This delay was adopted with the intent and effect of diluting Native American voting strength in Lyman County in violation of Section 2 of the Voting Rights Act and denying Plaintiffs the opportunity to elect candidates of their choice to the County Board of Commissioners. The delay was adopted with a discriminatory purpose in violation of Section 2 and the Fourteenth and Fifteenth Amendments to the United States Constitution.

3.      Plaintiffs seek injunctive relief requiring Lyman County to implement its new plan without delay and to hold elections in 2022 to allow Native American voters to elect the candidates of their choice. They also seek declaratory and other relief available under the applicable civil rights statutes.

**JURISDICTION AND VENUE**

4.      This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331,

1343(a)(3)-(4), 1362, 2201(a) and 2202, 42 U.S.C. § 1983, and 52 U.S.C. § 10308(f).

5.      Venue is proper in this Court under 28 U.S.C. §§ 122(3) and 1391(b).

**PARTIES**

*Plaintiffs*

6.      Plaintiff Lower Brule Sioux Tribe ("Lower Brule") is a federally recognized

Indian tribe with an enrollment of approximately 3,410 members. It is organized

pursuant to the Indian Reorganization Act of 1934, Pub. L. No. 73-383, 48 Stat. 984

(1934). Its Tribal Council is authorized by law to safeguard and promote the peace,

safety, morals, and general welfare of the Tribe and to regulate and conduct trade and

the use and disposition of property upon the Reservation. LOWER BRULE SIOUX CONST. &

BYLAWS, art. VI §1.[1]

7.      Lower Brule is located on the Lower Brule Reservation, which includes land in

Lyman and Stanley Counties in South Dakota. Lower Brule's members include

registered voters in Lyman County.

8.      Lower Brule brings this suit on its own behalf to protect its sovereign interests,

including its place in the federal system, and as *parens patriae* to protect its members'

statutory and constitutional rights and health and welfare through the prevention of

future violations of their constitutional rights.

---

[1] https://www.lowerbrulesiouxtribe.com/lower-brule-constitution

9.      Plaintiff Neil Pierre Russell, also known as Cody Russell, is an enrolled member of the Lower Brule Sioux Tribe and Vice Chairman of the Lower Brule Tribe. Mr. Russell resides on the Lower Brule Reservation and is a Native American voter registered to vote in District 1 of Lyman County's new redistricting plan.

10.     Plaintiff Stephanie Bolman is a member of the Lower Brule Sioux Tribe and a member of the Lower Brule Tribal Council. Ms. Bolman resides on the Lower Brule Reservation and is a Native American voter registered to vote in District 1 of Lyman County's new redistricting plan.

11.     Plaintiff Ben Janis is a member of the Lower Brule Sioux Tribe. Mr. Janis resides on the Lower Brule Reservation and is a Native American voter registered to vote in District 1 of Lyman County's new redistricting plan.

*Defendants*

12.     Defendant Lyman County is a political subdivision of the State of South Dakota.

13.     Defendant the Lyman County Board of Commissioners is the governing body of Lyman County. The Board of Commissioners is responsible for adopting the redistricting plan governing the election of its members.

14.     Defendants Brian Kraus, Leslie Reuer, Zane Reis, Ryan Huffman, and Jared Schelske are the current members of the Lyman County Board of Commissioners. Each is sued in his or her official capacity only.

15.     Defendant Deb Halverson is the Lyman County Auditor. She the clerk of the Board of Commissioners, S.D. Codified Laws §7-10-1, and bears primary responsibility

for election administration in the county, S.D. Codified Laws §7-10-5. She is sued in her official capacity only.

## BACKGROUND

16.     While the homeland of the Lower Brule Sioux Tribe has no formal boundaries and for thousands of years stretched between the Rocky Mountains and the Great Lakes, today its Reservation is along the Missouri River in the County.

17.     As a result of treaties with the federal government, subsequent violations of those treaties, land allotment policies, and other government policies which have eroded Lower Brule's once-plenary ownership of and control over its lands, the Lower Brule Sioux Reservation today is a 'checkerboard' of lands, with different types of ownership.

18.     Because of the nature of the United States reservation system and the history of discrimination against Native Americans in South Dakota, Native Americans in Lyman County are concentrated on and near the Reservation and therefore form a geographically compact population within the County.

19.     Most of the Lower Brule Sioux Tribe Reservation is in the northwestern portion of Lyman County.

20.     Lyman County encompasses 1,641.94 square miles of land in southeast South Dakota. The Missouri River forms its eastern and northeastern boundaries.

**County Population**

21.     Lyman County's population and demographics, as recorded in the 2020 Census,

are represented in Figure 1.

**Figure 1. Lyman County Population (2020 Census)[2]**

|  | Total Population |  | Voting Age Population (VAP) |  |
|---|---|---|---|---|
| Non-Hispanic Native American and Alaska Native (Alone or In Part) | 1,714 | 46.1% | 1,028 | 39.2% |
| Non-Hispanic White (Alone) | 1,915 | 51.5% | 1,532 | 58.4% |
| Non-Hispanics of Some Other Race | 44 | 1.2% | 29 | 1.1% |
| Hispanics of Any Race | 45 | 1.2% | 33 | 1.3% |
|  |  |  |  |  |
| Total Population | 3,718 |  | 2,622 |  |

22.     In the last decade, the County's population decreased by almost 5%. According

to the 2010 census, its total population was 3,755; by the 2020 Census, it had fallen to

3,718. Non-Hispanic Whites experienced the largest decrease in Lyman County of any

population group between the 2010 and 2020 Censuses, falling from 2,191 in 2010 to

1,915 in 2020 (about 12.6%).

23.     By contrast, during the past decade, the Native American population has grown

in Lyman County by over 21%. According to the 2010 Census, there were 1,436 Native

---

[2] *Source: U.S. Census, 2020 Census Redistricting Data (Public Law 94-171) Summary File, Hispanic or Latino, and Not Hispanic or Latino by Race, Tables P2 and P4.*

Americans, comprising 38.2% of the County's total population. The 2020 Census

recorded 1,744 Native Americans, comprising 46.9% of the County's total population.

## The Board of Commissioners

24.     The Lyman County Board of Commissioners historically had commissioner

districts. The County dissolved its commissioner districts and chose to elect its members

at large across the entire County in February 1992. The County voted to continue to

hold at large elections in February 2002 following the 2000 Census and voted yet again

to maintain the at-large system in 2012 after the 2010 Census.

25.     The Lyman County Board of Commissioners currently consists of five members

elected at large to staggered four-year terms. Three members are elected in

gubernatorial election years (on cycle with federal mid-term elections), and two

members are elected in presidential election years.

## The New Redistricting Plan

26.     The Board of Commissioners adopted a new redistricting plan under which

members will be elected from two multi-member districts. The plan is effective June 4,

2022.[3] District 1 encompasses most of the Lower Brule Reservation and has a majority-

Native American voting-age population. District 2 has a majority-white voting age

population. District 1 will elect two commissioners, and District 2 will elect three

commissioners.

---

[3] The plan is effective when House Bill 1127, the legislation allowing the new
redistricting plan, takes effect, June 4, 2022.

27.     Even though the new redistricting plan has created a new multi-member district with the expectation that its Native American majority will elect Native American representation, elections for one of those new representatives will not take place until November 2024, and the second will not be elected until November 2026.

28.     The November 2022 elections will take place under the old at-large system. Thus, Native American voters in Lyman County will remain unrepresented for two more years and underrepresented for four more years.

### The History of Lyman County's New Redistricting Plan

29.     Throughout Lyman County's redistricting process and ultimate adoption of its redistricting plan, Defendants' actions reveal a pattern of intentional discrimination against Native American voters including a failure to take seriously input from their representatives.

30.     Following the release of the 2020 Census data, the Lyman County Board of Commissioners began the process of reviewing the method of electing its members and initially received input from members of the community, including Lower Brule representatives, such as the Plaintiffs here.

31.     Over the course of that process, one of those representatives, Vice Chairman Cody Russell, met with the Board on four occasions: October 19, 2021; November 2, 2021; November 16, 2021; and January 25, 2022.

32.     On October 19, 2021, Vice Chairman Russell provided the Board with an illustrative plan dividing the County into five single-member districts, two of which contained strong Native American voting-age majorities. He explained that at-large

commissioner elections had so far denied Native Americans in Lyman County any opportunity to elect Native candidates to the Board of Commissioners, and that Section 2 of the Voting Rights Act required the Board to enact a plan like the one he had provided.

33.    The Vice Chairman's plan met all requirements of federal and state law while complying with traditional redistricting principles. Each district was compact and comprised of contiguous territory and all were substantially equal in population. The plan also observed political and geographic boundaries while preserving communities of interest.

34.    On November 2, 2021, Vice Chairman Russell attended the Board's next public meeting, but this time the Board refused to allow him to testify. The Vice Chairman instead submitted written testimony further demonstrating that Section 2 of the Voting Rights Act required the Board to enact a plan like the one he had provided.

35.    At its November 16, 2021, meeting, the Board told the Vice Chairman that it was considering dividing Lyman County into two multi-member commissioner districts instead of five single-member districts. The Board did not provide any further details about its two-district proposal. The Board agreed to provide Lower Brule with a copy of its plan within the week but did not do so.

36.    At the time of the November meeting, South Dakota law did not permit counties to use multi-member districts.

37.     After the Board's meeting on January 25, 2022, the Board gave Vice Chairman Russell a memo from the county's attorney that proposed amending South Dakota law to allow counties to use multimember districts.

38.     On February 2, 2022, Lower Brule finally received a copy of the map containing the Board's two-district proposal.

39.     To accompany its two-district proposal, the County also developed a draft redistricting ordinance. The Ordinance provided that the Board's two-district proposal would take effect if the State amended South Dakota law to allow counties to use multimember districts. Otherwise, the Ordinance provided that members would be elected from five single-member districts, two of which would be majority-Native. The Ordinance also provided that implementation of any new plan would be delayed until the 2024 election cycle "to allow for the administrative changes to the TotalVote system due to time constraints of the current election cycle."

40.     The means by which the County planned to reach its impermissible goal of delaying the new redistricting plan became plain to Lower Brule when Senator Heinert sent the Ordinance to Lower Brule February 11.

41.     TotalVote, a BPro software product, is the statewide voter registration system used by all counties in South Dakota.

42.     Every county in the State whose jurisdictional lines shifted during the decennial redistricting used TotalVote to update the voter registration records of their registered voters to reflect the newly established districts.

43.     TotalVote is easy to use and can be operated by someone with standard office-level computer skills.

44.     Dewey, Jackson, Lincoln, and Minnehaha Counties, all of which had to assign some combination of new precincts and new legislative, commissioner, and municipal districts, have already completed the entire administrative redistricting reassignment process, using TotalVote, well ahead of any election deadlines.

45.     On February 9, 2022, the Tribal Council of the Lower Brule Sioux Tribe adopted a resolution opposing the Board's two-district proposal. Vice Chairman Russell then emailed the resolution to Defendant Halverson.

46.     Neither Halverson nor any Lyman County Commissioner responded to the Tribal resolution. Instead, the Board adopted the draft Ordinance without change.

47.     A true and correct copy of the Ordinance is attached as Exhibit A.

**The Legislature Amends South Dakota Law at the County's Request**

48.     On February 28, 2022,[4] State Representative Rebecca Reimer introduced Lyman County's proposed legislative amendment permitting counties to use multimember districts as a "hoghouse amendment" to House Bill 1127 before the Senate State Affairs Committee.

49.     A hoghouse amendment is a procedure used in the South Dakota Legislature whereby a member can move to strike everything after the enacting clause of a bill and then insert the substance of an entirely new bill.

---

[4] Link to audio of February 28, 2022 Senate State Affairs Committee meeting: https://sdpb.sd.gov/sdpbpodcast/2022/sst30.mp3#t=544

50.     Hoghouse amendments are disfavored procedural maneuvers.

51.     Reimer's amendment came weeks after the South Dakota Legislature's deadline for introducing new bills.

52.     Members of Lower Brule had no notice of Reimer's intention to introduce the hoghouse amendment on February 28.

53.     Senator Troy Heinert, who represents Lyman County and is the only Native American member of the Senate State Affairs Committee, informed the Committee that Representative Reimer's amendment had been introduced at Lyman County's request and thathe believed the Lower Brule Sioux Tribe did not want the amendment.  Lower Brule's position, as expressed by Vice Chairman Russell in October 2021, remained that County Commissioners should be elected from single members districts drawn in compliance with Section 2 of the Voting Rights Act.

54.     Senator Heinert also explained to the Committee that Representative Reimer's use of a hoghouse amendment had deprived Tribal members of the opportunity to comment on legislation that directly impacted them. Furthermore, he pleaded to the Committee to at least extend the courtesy to the Lower Brule Sioux Tribe to make their case against the legislation.

55.     The County's attorney, who had drafted the amendment, testified that it was necessary because state law did not "allow the counties…to move from at-large to districts."   She offered no other justification for the change.

56.     Senator Heinert then requested that the Committee defer opponent testimony for two days until March 2, 2022, to permit representatives of the Lower Brule to make their case.

57.     During the March 2, 2022, hearing, Vice Chairman Russell testified on behalf of Lower Brule in opposition to the bill. Representatives from other tribes in South Dakota also testified in opposition to the bill, explaining the bill's potential to undermine or reverse their efforts to advocate for fair redistricting plans in their own counties. However, the Committee Chair did not permit full testimony in opposition, despite permitting full time to the bill's proponents.

58.     The Legislature passed Representative Reimer's amendment, and the Governor signed it into law on March 28, 2022.

**The Senate Factors**

59.     In *Thornburg v. Gingles*, 478 U.S. 30 (1986), the Court, citing a Senate Judiciary Committee report written during the 1982 reauthorization of the Voting Rights Act, set forth a non-exhaustive list of factors courts should look to in deciding whether at-large or multimember voting districts dilute minority votes or otherwise block minority representation in violation of Section 2 of the VRA. These factors are: (1) the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process; (2) the extent to which voting in the elections of the state or political subdivision is racially polarized; (3) the extent to which the state or political subdivision has used unusually large election districts, majority

13

vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group; (4) if there is a candidate slating process, whether the members of the minority group have been denied access to that process; (5) the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process; (6) whether political campaigns have been characterized by overt or subtle racial appeals; (7) the extent to which members of the minority group have been elected to public office in the jurisdiction; (8) whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group; and (9) whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.  *Gingles*, 478 U.S. at 44-45; *see also* S. Rep. No. 97-417, at 28-29 (1982), reprinted in 1982 U.S.C.C.A.N. 177.

60.     Native Americans in Lyman County are sufficiently numerous and geographically compact to constitute a majority of the voting-age population in at least two single-member districts in an illustrative five-district plan for electing members of the Lyman County Board of Commissioners. *See* Lower Brule's illustrative map and population statistics, attached as Exhibit B.

61.     Native Americans in Lyman County are politically cohesive.

14

62.     The white majority in Lyman County votes sufficiently as a bloc to enable it—in the absence of special circumstances—usually to defeat the candidates preferred by Native Americans in Lyman County.

63.     South Dakota and Lyman County have a long and extensive history of discrimination against Native Americans.

64.     This pattern of discrimination persists today in and around Lyman County. For example, Chamberlain School District, part of which is in the County, entered into a Consent Decree with the United States Department of Justice on May 27, 2020, to address its use of at-large elections that deprived Native American voters an opportunity to elect their preferred candidates to the school board.

65.     Native Americans in Lyman County bear the effects of discrimination in such areas as housing, employment, and health, which hinder their ability to participate effectively in the political process.

66.     Voting in Lyman County is racially polarized.

67.     Commissioner elections in Lyman County feature two voting practices that enhance the opportunity for discrimination against Native Americans and dilute Native American political influence: at-large elections and staggered terms.[5]

---

[5] "Staggered terms can further dilute the voting power of minorities because they limit the number of seats [and] create more head-to-head contests between white and minority candidates, which highlight the racial element…" *Cottier v. City of Martin*, 466 F. Supp. 2d 1175 (D.S.D. 2006) (internal citations omitted); "[A] staggered term requirement combined with a white majority and white block voting places a minority at a severe disadvantage." *Buckanaga v. Sisseton Indep. Sch. Dist. No. 54–5, S.D.*, 804 F.2d 469, 475 (8th Cir. 1986).

68.     Upon information and belief, no Native American has ever been elected to serve on the Lyman County Commission.

69.     Lyman County has been unresponsive to the particularized needs of Native American residents.

70.     Lyman County has not articulated a plausible reason for a delay in implementation of the redistricting plan and no other county in the State has encountered any obstacles of implementation of redistricting plans based on the 2020 Census for the November 2022 election.

71.     The current at-large method of electing members of the Board lacks proportionality in that it maintains just one county-wide electoral district in which Native American voters do not constitute an effective majority, even though Native American voters constitute a large enough portion of the County's population to constitute an effective majority in two single-member districts.

72.     Before enacting its new redistricting plan, the Board had a strong basis in evidence that the current at-large method of electing Commissioners dilutes Native American voting strength in violation of Section 2 of the Voting Rights Act. The intent and effect of the delayed implementation of the new redistricting plan, and continued use of the at-large election scheme, is that Native voters will continue to be unlikely to achieve representation.

73.     Lyman County's blatant and irregular actions during the 2021 restricting process demonstrate its intent to deny Native voters the ability to equally participate in the electoral process. Lyman County belatedly and without providing requested

information to Lower Brule and its representative created a hybrid map that was not allowed under South Dakota law. It then resorted to an opaque and secretive legislative procedure to introduce a piece of legislation that Lower Brule strongly opposed. To cement its scheme to deny equal representation, its redistricting Ordinance both delayed and staggered the vote, thus preventing Native American voters from having an equal opportunity to participate in the electoral process and to elect representatives of their choice until 2026.

## CLAIM ONE

74.     The current at-large method of electing members of the Lyman County Board of Commissioners dilutes Native American voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

## CLAIM TWO

75.     The Board's decision to delay implementation of its new redistricting plan has the effect of diluting Native American voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

## CLAIM THREE

76.     The Board's decision to delay implementation of its new redistricting plan was adopted with a discriminatory purpose in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

## BASIS FOR INJUNCTIVE RELIEF

77.     A real and actual controversy exists between the parties.

78.     Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

79.     Plaintiffs are suffering irreparable harm as a result of the violations alleged in this complaint, and that harm will continue unless declared unlawful and enjoined by this Court.

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.     declare that the current at-large method of electing members of the Lyman County Board of Commissioners dilutes Native American voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

2.     declare that the Board's decision to delay implementation of its new redistricting plan has the effect of diluting Native American voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

3.     declare that the Board's decision to delay implementation of its new redistricting plan was adopted with a discriminatory purpose in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments to the United States Constitution;

4.     enjoin Defendants from delaying implementation of the approved hybrid plan and require Defendants to hold elections in 2022 for two representatives from District 1, as SDCL § 7-8-1 dictates;

5.     award Plaintiffs the costs of this action together with their reasonable attorneys' fees and expenses under 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988;

6.      authorize the appointment of federal observers under 52 U.S.C. § 10302(a) for

such period as the Court deems appropriate under the circumstances;

7.      retain jurisdiction under 52 U.S.C. § 10302(c) for such period as the Court deems

appropriate under the circumstances; and

8.      grant Plaintiffs any other relief that the Court deems necessary and proper.

Signed this 18th day of May 2022.

Randolph J. Seiler
SD Bar No. 1559
randyseilerlaw@gmail.com
RANDY SEILER LAW OFFICE, LLC
2411 Whispering Shores Drive,
Ft. Pierre, SD 57532
Telephone: (605) 223-9040
Fax: (202) 822-0068

Bryan Sells*
GA Bar No. 635562
bryan@bryansellslaw.com
THE LAW OFFICE OF BRYAN L. SELLS,
LLC
Post Office Box 5493
Atlanta, GA 31107-0493
Telephone: (404) 480-4212 (voice and fax)

Samantha B. Kelty*
AZ No. 024110, TX No. 24085074
kelty@narf.org
NATIVE AMERICAN RIGHTS FUND
1514 P St. NW, Suite D
Washington, D.C. 20005
(202) 785-4166 (direct)

Michael S. Carter*
OK No. 31961
carter@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80301
Telephone: (303) 447-8760 (main)
Fax: (303) 443-7776

Tara Ford*
CA Bar No. 322049, NM Bar No. 7560
tford@publiccounsel.org
Kathryn Eidmann*
CA Bar No. 268053
keidmann@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385-2977
Fax: (213) 385-9089

John F. Libby*
CA Bar No. 128207
jlibby@manatt.com
Sirena P. Castillo*
CA Bar No. 260565
scastillo@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Fax (310) 312-4224

*Attorneys for the Plaintiffs*
*Applications for admission pro hac vice forthcoming*

20

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Lower Brule Sioux Tribe; and individual members Neil Pierre Russel, Stephanie Bolman, Ben Janis

**(b)** County of Residence of First Listed Plaintiff   Lyman County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

(See attached addendum)

## DEFENDANTS

Lyman County, Lyman County Board of Commissioners (See attached addendum)

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [x] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
52 U.S.C. § 10301
Brief description of cause:
(See attached addendum)

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
5/18/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Randolf J. Seiler

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

Section I(a) Defendants

Lyman County, Lyman County Board of Commissioners, Brian Kraus, Leslie Reuer,
Zane Reis, Ryan Huffman, Jared Schelske, Deb Halverson

Section I(c) Attorneys for Plaintiffs

Randolf J. Seiler
SD Bar No. 1559
randyseilerlaw@gmail.com
RANDY SEILER LAW OFFICE, LLC
2411 Whispering Shores Drive,
Ft. Pierre, SD 57532
Telephone: (605) 223-9040
Fax: (202) 822-0068

Samantha B. Kelty
AZ No. 024110, TX No. 24085074
kelty@narf.org
NATIVE AMERICAN RIGHTS FUND
1514 P St. NW, Suite D
Washington, D.C. 20005
Telephone: (202) 785-4166 (direct)
Fax: (202) 822-0068

Michael S. Carter
OK No. 31961
carter@narf.org
Matthew Campbell
NM No. 138207, CO No. 40808
mcampbell@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80301
Telephone: (303) 447-8760 (main)
Fax: (303) 443-7776

Bryan Sells*
GA Bar No. 635562
bryan@bryansellslaw.com
THE LAW OFFICE OF BRYAN L. SELLS,
LLC
Post Office Box 5493
Atlanta, GA 31107-0493
Telephone: (404) 480-4212 (voice and fax)

Tara Ford*
CA Bar No. 322049, NM Bar No. 7560
tford@publiccounsel.org
Kathryn Eidmann*
CA Bar No. 268053
keidmann@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Fax: (213) 385-9089

John F. Libby*
CA Bar No. 128207
jlibby@manatt.com
Sirena P. Castillo*
CA Bar No. 260565
scastillo@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Fax: (310) 312-4224

Section VI Cause of Action

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 52 U.S.C. § 10301

Brief description of cause: Contesting County's current at-large method of election and delay of implementation of new redistricting plan in violation of Section 2 of the VRA, and the Fourteenth and Fifteenth Amendments.